**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAN STASTNY, RICHARD DAI, AMELIA CAI and DAVID CHOI, | |
| Plaintiffs, | Case No. _____ |
| v. | DEMAND FOR JURY TRIAL |
| AADI BHANTI and DROPMINTS, INC. | |
| Defendants. | |

## **COMPLAINT**

Plaintiffs Jan Stastny, Richard Dai, Amelia Cai and David Choi (collectively, "Plaintiffs"), by and through their undersigned counsel, allege the following against Defendants Aadi Bhanti ("Bhanti") and Dropmints, Inc. ("Dropmints"), ("Defendants"):

## **NATURE OF THE ACTION**

1.     This case arises from a fraud perpetrated by Aadi Bhanti, a resident of Illinois who touted himself to investors in the digital asset space as an up-and-coming cryptocurrency and blockchain entrepreneur.  Using fictional credentials and forming the Delaware corporation Dropmints, Inc. to lend himself credibility, Bhanti solicited money with the promise that he was building a non-fungible token (NFT) platform that would enable artists and other content creators to "mint, list and sell NFTs to your fans, without any complexities."

2.     Mr Bhanti even retained a reputable Chicago law firm to assist him and attempt to insulate him from liability for his fraud by drafting a "Simple Agreement for Tokens or Equity," creating the guise of a legitimate contract between his victims and Dropmints.

3.     For months, Bhanti alternately promised his "investors" that Dropmints was creating groundbreaking new technology and would soon be launching, or that their money would soon be returned, and when neither happened, he offered a bizarre and incredible series of lies and excuses.  As investors would soon discover, all of Bhanti's hype was a sham.  Dropmints, far from being a real enterprise, was only a setup for Bhanti to effectuate the proverbial "rug-pull," shamefully absconding with all of his victims' money and using it for his own selfish ends.

4.     As set forth in detail below, Bhanti spent most of the plaintiffs' money to rent several Lamborghinis, a McLaren and a Mercedes, to charter private jets to ferry himself and his friends to California and Colorado (and back) multiple times, and to pay for luxury hotel accommodations, including rentals of two multimillion-dollar Hollywood Hills villas, all of which had no conceivable business purpose.

5.     This lawsuit seeks to hold Bhanti responsible for his fraud and recover the nearly $600,000 that he stole from the plaintiffs.

## THE PARTIES

6.     Plaintiff Jan Stastny ("Stastny") is an individual residing in Singapore.

7.      Plaintiff Richard Dai ("Dai") is an individual residing in San Juan, Puerto Rico.

8.     Plaintiff Amelia Cai ("Cai") is an individual residing in Miami Beach, Florida.

9.     Plaintiff David Choi ("Choi") is an individual residing in San Juan, Puerto Rico.

10.     Upon information and belief, Defendant Bhanti is an individual residing at 6613 W. Waterstone Way, Edwards, Illinois, 61528.

11.     Upon information and belief, Defendant Dropmints is a corporation duly organized and existing under the laws of the state of Delaware.  To the extent it does any business at all, its principal place of business is in Illinois, where Bhanti is located.

4895-9058-2322, v. 1

## JURISDICTION

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because (i) it is a civil action between citizens of different U.S. states, between citizens of a State and citizens or subjects of a foreign state, and/or between citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (ii) the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

13.    This Court has personal jurisdiction over Bhanti because Bhanti purposefully availed himself of the laws of the state of Delaware and transacted business in Delaware when he created Dropmints as a  Delaware entity and purported to be the CEO of Dropmints for the purposes of effectuating the fraud alleged herein.

14.    This Court has personal jurisdiction over Dropmints because Dropmints is a corporation duly formed under the laws of the State of Delaware.

15.    Venue is proper in this district because defendant Dropmints was formed in this jurisdiction and used to perpetrate the fraud alleged herein.

## FACTUAL BACKGROUND

### Bhanti Baits the Hook

16.    Bhanti laid the groundwork for his fraudulent scheme by promoting himself tirelessly on the Internet, creating a digital paper trail of himself as a young entrepreneur with a track record of successful businesses.

17.    Upon information and belief, Bhanti caused posts to be made by various internet "media" sites touting him as a "genius entrepreneur that you've never heard of" and an "innovation machine" at the cutting edge of various businesses.

18.    Among other claims, those articles reported that Bhanti had started a successful social media agency at the age of 15, formed a startup called Source to Table which "sells meat,"

and in 2020, created a non-traditional talent agency called "InfluenceX" that within months was "closing massive deals with large corporations and some of the biggest names on TikTok and Instagram." In connection with InfluenceX, "Futuresharks" reported that Bhanti was "travelling around the country to meet with entertainment industry powerhouses creating opportunities for his exclusive and non-exclusive talent which were unparalleled by anyone else."[1] See *The Story Of Aadi Bhanti- From High School Student to Innovation Machine*, September 23, 2020.

19. Bhanti also promoted himself on Twitter under the handle @realaadibhanti and on Telegram under the handle @nonfungibleaadi.[2]

20. In April of 2021, Bhanti began promoting another business on Twitter, which he referred to as "Dropmints."

21. On or about April 15, 2021, in furtherance of his fraudulent scheme, Bhanti caused the corporation Dropmints, Inc. to be formed in the State of Delaware.

22. On August 3, 2021, Bhanti posted to Twitter that Dropmints "is launching publicly on November 1st"

23. Upon information and belief, Bhanti retained the Chicago law firm of Katten Muchin Rosenman LLP to draft a "Simple Agreement for Future Tokens or Equity" or "SAFTE" that was used to effectuate the planned fraud. The SAFTE was created with the sole purpose of

---

[1] Available at https://futuresharks.com/the-story-of-aadi-bhanti-from-high-school-student-to-innovation-machine/.

[2] Upon information and belief, Bhanti's Twitter handle was inspired by his hero and political idol, former President Donald J. Trump. Bhanti also has used the handle @politicalbhanti on Twitter and Instagram, and has self-published a political "show" on YouTube, Facebook and elsewhere in which he rants against "fascists and communists" and transgender persons. *See Crazy Communists, Trans Assault, and Male Greta Thunberg (Elephant in the Room Ep. 1)*, available at https://youtu.be/1GCBJp8xXcY.

enabling Bhanti to assert that the only party susceptible to suit for his fraudulent scheme was Dropmints, thereby insulating him from the consequences of overt theft.

24.     The SAFTE contained minimal substantive provisions governing the rights of "investors" who provided Bhanti with money thereunder.  It provided only that in exchange for payment, Dropmints would issue to "Investors" the right to either: (1) certain "Tokens" to be issued by an unnamed "Token Issuer" in the event of a future "Token Sale;" or (2) shares of Dropmints capital stock to be issued in the event of a future equity financing.

25.     Section 3 of the SAFTE included a representation by Dropmints that "[t]he execution, delivery and performance by the Company of this instrument is within the power of the Company and, other than with respect to the actions to be taken when equity or Future Token Rights are to be issued to the Investor, has been duly authorized by all necessary actions on the part of the Company."

26.     In reality, Dropmints never had the capability of performing its obligation to effectuate a "Token Sale," nor not did it ever take even the most rudimentary steps toward developing technology to enable it to so do.  Bhanti never had any intention of causing Dropmints to develop the promised NFT-creation technology (which was a pipe dream at best), nor engaging in an equity raise that would result in the "Investors" receiving capital stock in Dropmints.  The SAFTE was nothing more than an artifice to enable Bhanti to defraud his victims with impunity.

### Bhanti's Big Grift

27.     Plaintiffs Dai, Cai, Choi and Stastny, as investors in the digital asset space, had a close working relationship and a practice of pooling their capital to make investments in blockchain and cryptocurrency ventures.  In most instances, the capital for an investment was

- 5 -

provided by all four of them, while only one (in this instance, Stastny) would execute the documentation associated with that investment.

28.     On September 11, 2021, Bhanti claimed on Twitter to have built an NFT minting platform capable of minting NFTs in "between 30 and 60 seconds" with a single click and no fees. Upon information and belief, this technology did not exist.

29.     Bhanti posted to Twitter on September 23 that Dropmints "has already acquired a number of creators with a cumulative following larger than any other NFT platform that exists today." Upon information and belief, no such "acquisitions" had occurred.

30.     In late September 2021, Cai was introduced to Bhanti on Telegram through a mutual acquaintance. Bhanti solicited an investment from Cai by transmitting to her a 2-page "Dropmints Investment Memo" containing various false representations. Among other false representations set forth in the Investment Memo, Bhanti claimed that:

> a.     "Dropmints provides simple, jargon-free transactions that are still completely on chain and noncustodial. Each Dropmints profile is essentially an NFT wallet." Upon information and belief, this technology did not yet exist.
>
> b.     "On the collector side, Dropmints becomes even simpler. Fans can double tap the side of their iPhones to use Apple Pay to purchase NFTs or they can use their credit or debit cards." Upon information and belief, this technology did not yet exist.
>
> c.     "In order to support creators, we've also been building a back office team in India with graphic designers, editors, and mixed media specialists."

- 6 -

Upon information and belief, this "back office team in India" did not yet exist.

31.     The "Investment Memo" provided by Bhanti to Cai made further false representations regarding the progress of Dropmints. It stated, "[i]t's been an amazing few months at Dropmints" and listed the following accomplishments:

a.  "Finalizing and adding new creator, agency, and label partnerships. (at 1.5B combined followers amongst our creator base)." Upon information and belief, Dropmints had no binding creator, agency or label partnerships of any kind, much less a "creator base" boasting 1.5 billion followers.

b.  "Creator Hub Test Complete, view our findings in deck." Upon information and belief, the much touted "creator hub" did not exist in a manner that was usable by any person actually seeking to mint an NFT for public sale.

32.     The Investment Memo contained a link to a document Bhanti referred to as the "Big Vision." In the "Big Vision" Bhanti represented:

Dropmints is going to be a default global business. We're building the global stack for NFT minting, selling, and purchasing. We're already building the easiest way to interact with the ecosystem, and we're working with some of the largest creators in the US. We plan on using these relationships, as well as working with our partners on building core groups of creators in India, Nigeria, Ghana, and Hungary to build a robust NFT presence there.

33.     All of the representations of present fact in the "Big Vision" were false, or at least grossly exaggerated.

34.     Bhanti also provided to Cai on the website "Figma" a mock-up of what the Dropmints app looked like.

- 7 -

35.     Cai transmitted the Investment Memo, the "Big Vision" and the Figma mock-up to Dai, Choi and Stastny.  The plaintiffs also reviewed Bhanti's social media history and the available public information regarding Bhanti.

36.     In reliance on the public and private representations made by Bhanti, the plaintiffs pooled their capital and provided $80,000 to Bhanti on October 1, 2021.  That transfer was documented in the form of an undated SAFTE between Dropmints and Stastny.

37.     On October 20, 2021, shortly after telling the plaintiffs that he was flying to Dubai to participate in the "biggest week in dubai crypto history," Bhanti messaged plaintiffs and claimed to be doing "an exclusive collection with the royal family of dubai."  There was no such deal.

38.     On November 2, 2021, Bhanti invited Cai to stop by the Dropmints "office" at 177 Prince Street in New York.  Cai was unable to do so but asked to visit the Dropmints office when she visited New York City several weeks later.

39.     When Cai expressed readiness to visit the Dropmints office weeks later, Bhanti claimed that he was "out of New York for 2 weeks" and would be unable to meet with Cai.

40.     Upon information and belief, 177 Prince Street is an event space that provides rentals for corporate retreats, weddings and other short-term events under the trade name "The Lofts at Prince."  Dropmints never maintained a regular office at that location.

41.     In reliance on the additional public and private representations made by Bhanti, the plaintiffs pooled their capital and provided $163,000 to Bhanti on December 8, 2021.  That transfer was documented in the form of an undated SAFTE between Dropmints and Stastny.

42.     On February 8, 2022, Bhanti represented to the plaintiffs that Dropmints "just locked in Jake Paul" and "a bunch of other massive creators" and "launched our creator hub."  Upon information and believe, Jake Paul was not "locked in" and no such "creator hub" existed.

- 8 -

43.     On the same date Bhanti also represented that "we have Logan [Paul] coming on board as well, and Mike [Majlak]." Bhanti further represented that Dropmints "[b]rought on a top-tier CMO, was named #1 gen-Z expert by Forbes, was the youngest Adweek Young Influential, knows quite literally everyone in creator world."

44.     Bhanti continued on February 8 by asserting that "We're doing a private round prior to our marketplace launch on March 1st. I think that may be one of our last rounds of funding. Based on the creators we have, our plans with them we have a strong belief Dropmints can be profitable at scale by EOY."

45.     On February 9, Bhanti represented that "We secured a partnership with Get Engaged the largest music marketing agency in the country as their official NFT partner (work with all major labels)."

46.     On that date Bhanti also stated to plaintiffs without any preface that "We're bringing in another 6.5 this round. Can allocate $350k!"

47.     On or about February 10, 2022, Bhanti represented to the plaintiffs that "We just pushed our new landing page live- it's our first time putting information out publicly on what Dropmints is and what it does. This is also a push to get username reservations."

48.     Upon information and belief, the "new landing page" was a shell containing various false representations regarding features that Dropmints did not and never would have:



a. After "[Dropmints] handles all the extra steps and allows creators to mint NFTs in just a few clicks. No wallets, smart contracts or confusing crypto transactions required."

b. "Fans can purchase NFTs using credit cards, debit cards, as well as Apple Pay. No crypto holdings required. Dropmints checkout prevents fraud and ensures a secure transaction between creator and fan.

c. "We have no upfront fees for minting NFTs and creators pay zero dollars in gas fees to create on Dropmints. We allow creators to focus on creativity while we handle all the technicalities."

4895-9058-2322, v. 1

d.  "Dropmints NFTs allow fans to gain true ownership of the content they love. Activate your community and form a special bond with your audience. Give your fans access to merch for the metaverse."

49.     By clicking on a button labeled "Launch App," visitors to the landing page could be taken to a page that prompted them to enter their email addresses:



50.     Bhanti claimed that the "Launch App" page would enable users to "get username reservations," although there was no app in existence and no usernames capable of being reserved.

51.     In reliance on the public and private representations made by Bhanti, and the representation that Dropmints was conducting a private, exclusive seed round of $6.5 million, the plaintiffs pooled their capital and provided $350,000 to Bhanti on February 11, 2022. That transfer was documented in the form of an undated SAFTE between Dropmints and Stastny.

52.     The plaintiffs sent a sum total of $593,000 to Bhanti between October 1, 2021 and February 11, 2022 in reliance on Bhanti's representations that the money would be used to fund Dropmints' ongoing development of an NFT-creation platform.  All of those representations were grossly exaggerated, if not completely false.

4895-9058-2322, v. 1

53. Each transfer made to Bhanti was documented in the form of a SAFTE between Dropmints and Stastny. Although Stastny was formally stated in each SAFTE to be the "Investor," in reality each sum of money sent to Bhanti consisted of a pooled sum of capital contributed by all four plaintiffs, who acted together as an informal partnership.

54. Bhanti was aware at all times alleged herein that the $593,000 he received belonged to all four of the investors.

55. In February and March of 2022, Bhanti claimed to be hiring software developers to work on Dropmints, including a "front end engineer," a "full stack engineer," and a "solidity developer," as well as an admin. Bhanti claimed that these hires would enable Dropmints to add "some crazy features next month," including "remixable NFTs" and "NFTs that can have full text conversations using conversational AI and smart contracts that pull data."

56. Upon information and belief, all of these representations regarding the purported operations and plans of Dropmints were false, and calculated to induce the plaintiffs to invest even more money into Bhanti's fraudulent scheme. None of these "crazy features" ever were in the process of being built, nor did Dropmints ever hire developers capable of creating them.

57. To date, the "landing page" for Dropmints remains exactly the same as it appeared on February 10, 2022. After all this time and money spent by Bhanti, Dropmints does not exist even as an incipient business. There is no "minimum viable product," no developers creating the much-touted NFT platform, and not even the semblance of a business plan.

58. Upon information and belief, Bhanti spent nearly all of the money he received from his victims on private jet flights, luxury hotels and supercar rentals, as set forth in detail below.

**Bhanti's Spending Spree With Plaintiffs' Money**

59.     Upon information and belief, based on receipts and other documentation and information received from knowledgeable and credible sources, Bhanti spent the plaintiffs' money (and the money received from other victims of his fraud) at least on the following high-priced luxuries:

60.     From January 9 to January 19, 2022, Bhanti rented a villa known as the "Infinity Villa" in the Hollywood Hills of Los Angeles, California at $7,600 per night, at a total cost of $76,000.  A picture of the view from the Infinity Villa is below:



61.     From January 9 to January 19, 2022, during the stay at the Infinity Villa, Bhanti rented a Lamborghini Urus at a cost of $1,500 per day, at a total cost of $15,000.

62.     From January 9 to January 19, 2022, during the stay at the Infinity Villa, Bhanti rented a Lamborghini Performante at a cost of $1,800 per day, at a total cost of $18,000.

4895-9058-2322, v. 1

63.     From January 9 to January 19, 2022, during the stay at the Infinity Villa, Bhanti rented a McLaren 720s at a cost of $1,400 per day, at a total cost of $14,000.

64.     From January 31 to February 6, 2022, Bhanti rented a villa known as the "Plaza Villa" in the Hollywood Hills of Los Angeles, California at $7,857 per night, at a total cost of $55,000.  A picture of the view from the Plaza Villa is below:



65.     From January 31 to February 6, 2022, during the stay at the Plaza Villa, Bhanti rented a Lamborghini Urus at a cost of $1,500 per day, at a total cost of $10,500.

66.     From January 31 to February 6, 2022, during the stay at the Plaza Villa, Bhanti rented a Lamborghini Performante at a cost of $1,800 per day, at a total cost of $12,600.

67.     From January 31 to February 6, 2022, during the stay at the Plaza Villa, Bhanti rented a Mercedez Benz G63 at a cost of $900 per day, at a total cost of $9,000.

4895-9058-2322, v. 1

68.     At least two of the Lamborghinis rented by Bhanti were damaged, resulting in additional repair costs of $17,900.

69.     It was not sufficient for Bhanti to fritter away his victims' money on luxury villa rentals and exorbitantly expensive car rentals (three at a time, no less).  To get to various exotic destinations, Bhanti had to fly, and he could not be seen flying coach.  Instead he flew private, and brought his friends along to experience the lifestyle of a high-flying digital asset entrepreneur.

70.     Upon information and belief, on January 16, 2022, during the time that the Infinity Villa rental was ongoing, Bhanti chartered a flight from Los Angeles to Vail, Colorado at a cost of $46,000.  Mr. Bhanti brought with him an entourage of at least seven people, including Asia Carter and Parnia Porsche.

71.     Upon information and belief, Ms. Carter and Ms. Porsche are Instagram "models" located in the Los Angeles area.  They are not software developers.

72.     Bhanti then proceeded with his entourage from Vail to Aspen, Colorado, incurring ground transportation costs of $3,000 and hotel costs of $12,000.

73.     On January 19, 2022 (the last day of the Infinity Villa rental) Bhanti chartered a private jet from Eagle, Colorado to Chicago, at a cost of $17,949.63.

74.     His appetite for private air travel having been whetted, in the evening of January 19, Bhanti chartered a one-hour flight from Cleveland, Ohio to Chicago, Illinois at a cost of $25,262.50.

75.     On January 27, 2022, four days before his stay at the Plaza Villa, Bhanti chartered a morning flight on a private jet from Chicago to Van Nuys, California, at a cost of $38,665.45.

76.     Also on January 27, 2022, Bhanti chartered a second private jet from Chicago to Van Nuys, California at a cost of $42,965.45.

- 15 -

77. Mr. Bhanti apparently flew back to Illinois shortly thereafter, and then flew back to Los Angeles on yet another private jet on January 31, in time to enjoy the Plaza Villa rental.

78. Upon information and belief, Mr. Bhanti took several other private jet flights to and from various destinations, including but not limited to another flight from Aspen to Chicago for $39,000, a flight from Chicago to Los Angeles for $62,000, and another flight from Chicago to Los Angeles for $58,000.

79. There was no legitimate business purpose for any of these flights, hotel stays or car rentals, all of which had nothing to do with Dropmints and were arranged entirely for the gratuitous pleasure and enjoyment of Mr. Bhanti and his coterie of friends and hangers-on.

80. The full extent of Mr. Bhanti's shocking misappropriation of the funds entrusted to him is yet unknown, but will be more fully examined in the course of discovery.

<strong><u>Bhanti Dodges His Victims and Provides<br>Increasingly Implausible Lies and Excuses</u></strong>

81. Over the following months, after he had already spent the plaintiffs' money on frivolous luxuries and moved on to finding his next victims, Bhanti scheduled but then failed to dial into no fewer than five calls with the plaintiffs to discuss the status of their "investment."

82. On or about March 16, 2022, Bhanti did not appear for a scheduled status call with the plaintiffs. He later claimed that he was "travelling yesterday [*sic*] and completely missed the call time."

83. On or about March 18, 2022, Bhanti did not appear for a rescheduled call with the plaintiffs. He claimed he "took a redeye last night and was supposed to land at 6 am but we are delayed. Still in the air and landing 15 mins into our call." Bhanti asked to reschedule the call.

84. Bhanti then missed the next call, scheduled for 3pm the same day.

4895-9058-2322, v. 1

85.     Bhanti spoke to Cai by phone later in the day on March 18, and arranged to have a follow-up call with Dai and Cai together on Sunday, March 20.  Dai and Cai dialed into that March 20, call, but Bhanti was again nowhere to be found.  Later in the day, Bhanti wrote to his victims: "Hey. I'm actually not avoiding you guy[s] … I was in a different call with our attorneys. I try to get with them on weekends.  I have no intention of dodging you guys and not being transparent. I deeply apologize. No more excuses, only punctuality and action. Terrible look at the worst time."

86.     Dai responded: "[W]e have heard that you've been misappropriating assets in the company and spending investor funds on private jets and luxury car rentals, completely inappropriate. Not only that, I do have my suspicion on our funds being used to payback other investors due to you saying you needed funding immediately and also in ETH … " Cai chimed in with similar concerns.

87.     Bhanti responded to both of his victims, notably without denying that he had spent their money on private jets and luxury car rentals: "Understood, will get things moving on this. I was hoping we could have a conversation, but I myself ruined that opportunity.  I'm not sure what or who you guys think I am, but a lot of what's been going on is false / not my fault. But mistakes have been made. Let me know if there is any way we can discuss one last time tomorrow afternoon. Please And for the record, I absolutely did want to reschedule today. Sorry for not making that clear." Bhanti thereafter pleaded for one more call with Dai and Cai to explain himself: "Does 3:00pm EST work tomorrow? This is the final chance I'm asking for, if I miss that call- feel free to go ballistic and do your thing. I swear on my own life that I will be there and ready to go."  A call was scheduled for 3:30 EST the next day, March 21, 2022.

88.     Bhanti did not appear for the scheduled call (again), and later claimed he missed the call because he was "robbed at 11:44am PST" and that "Lil tjay the rapper who we thought

- 17 -

was our friend and helped get other rappers on Dropmints was on the way. His friends were the ones who did it" (a claim for which Bhanti provided zero evidence despite promising to share "the police report" and "texts to my parents" and "[l]ots more context and evidence").

89.     In March 2022, Bhanti transmitted to the plaintiffs a "Timeline of Investor Buyout and Funds Return," executed via DocuSign and purporting to be an official, legally binding document in which he claimed:

> Dropmints Inc., a Delaware C-corporation of which Aadi Bhanti is the CEO will buy out all investor SAFE's and SAFTE's who'd like to take this opportunity to receive a break even exit.
>
> Within three weeks from receiving this document, investors will have their complete and total investment amounts back from Dropmints Inc.
>
> As for investors with advisory, advisory equity will be purchased at our latest raise valuation by Aadi Bhanti within the same timeline as above.
>
> All funds will be returned via bank wire. Once all funds are returned, investors will be required to sign SAFTE cancellations and non-disparagement clauses to protect the business activities of Dropmints Inc. going forward.

90.     No funds were returned to the plaintiffs "three weeks from receiving this document" or at any other time thereafter.

91.     On May 3, 2022, Bhanti proposed to refund the plaintiffs' money "first 20% by May 15th, the 30% by June 15, 25% by July 1st, 25% by July 31st. You can put this on paper and it will be signed by me and family."  He proposed a call to discuss the offered refund.

92.     On or about May 4, 2022, Bhanti did not appear for the scheduled call with the plaintiffs, and later claimed he missed the call because he was "back in India" and "fell asleep" that he was "grinding all day here working on the product and actually building the company" and

that his Chief Technical Officer "left and he deleted all emails, notion files, figma files, whimsical files, access to heroku and mongo and more so been grinding rebuilding a lot of our stuff..." (for all of which he again showed no evidence to the plaintiffs).[3]

93.    Despite Bhanti's evident dishonesty, the plaintiffs took Bhanti up on his offer, having counsel draft an agreement at their own cost and expense and even offering additional time for Bhanti to make the payments.

94.    The agreement was not signed by Bhanti or by his family, despite multiple specific assurances, in writing, that it would be signed and sent back to the plaintiffs imminently. Those additional false promises occurred on at least May 12 ("will get it signed and returned"), May 16 ("Will send signed copy today") and May 20 ("You'll have the signed document Saturday").

95.    To this date, Bhanti continues to dodge his victims, and has since interposed a litigator at Katten Muchin, who tellingly professes to represent Dropmints, but not Bhanti individually.

## COUNT I: FRAUD
### (ALL PLAINTIFFS AGAINST BHANTI AND DROPMINTS)

96.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

97.    Bhanti represented to the plaintiffs on numerous occasions, both before and after taking their money, that he was at the helm of a legitimate company, Dropmints, and that Dropmints was building a revolutionary NFT-creation platform.

98.    Bhanti further represented that the SAFTE in connection with which the plaintiffs entrusted their money to him was a legitimate contract that would entitle them to rights in certain

---

[3] Upon information and belief, the "Chief Technical Officer" was a person named "Shiv" who was employed by Bhanti on a consultancy basis. Despite Bhanti's representation on Twitter that Dropmints would pay "Full benefits, competitive equity, 98th percentile salary!" Shiv later fell out with Bhanti because, true to form, Bhanti had refused to pay Shiv's wages.

token offerings or equity in Dropmints. Those representations were false and the three SAFTEs executed by Mr. Stastny were merely instruments by which Mr. Bhanti effectuated his fraud.

99.    Bhanti falsely represented to the plaintiffs that Dropmints had a viable business plan and that it eventually had operations, employees, and a product under development. None of that was true, and Dropmints as a company was merely an artifice to effectuate a fraud.

100.    The plaintiffs reasonably relied on the representations made by Mr. Bhanti that Dropmints was a legitimate enterprise and that he was offering them an opportunity to invest in it.

101.    As a result of this fraud, Plaintiffs have been damaged in an amount to be determined at trial, but no less than $593,000.

102.    As a result of Mr. Bhanti's egregious conduct, Plaintiffs are entitled to an award of punitive damages to be determined at trial.

103.    Further, as a result of this fraud, Plaintiffs are also entitled to recover their attorneys' fees.

### COUNT II: UNJUST ENRICHMENT
### (ALL PLAINTIFFS AGAINST BHANTI AND DROPMINTS)

104.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

105.    By The $593,000 that was intended to be used by Dropmints to build a NFT-creation platform was instead used by Bhanti and his friends to fund a jet-setting nouveau-riche lifestyle, including supercar rentals, vacation villas, and private flights to and from Los Angeles and Vail.

106.    Bhanti has enriched himself at plaintiffs' expense.

107.    It is against equity and good conscience to permit Bhanti to retain the benefit of plaintiffs' money, which was expected to be used by Dropmints for a legitimate purpose.

4895-9058-2322, v. 1

108.    As a result of Bhanti's conduct, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $593,000.

### COUNT III: CONVERSION
### (ALL PLAINTIFFS AGAINST BHANTI)

109.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

110.    Through fraud and deceit, Bhanti converted the $593,000 provided by plaintiffs for use by Dropmints for legitimate purposes, and appropriated it to himself.

111.    Despite multiple demands therefor and multiple unfulfilled promises to return the money, Bhanti has refused to return the $593,000.

112.    As a result, plaintiffs have suffered damages in an amount to be determined at trial, but no less than $593,000.

### PRAYER

WHEREFORE, Plaintiffs pray that the Court enter final judgment and grant the following relief against Defendants:

a.  Compensatory damages in the sum of at least $593,000, plus interest, and all fees owed;

b.  Punitive damages;

c.  An award of reasonable attorneys' fees, costs, disbursements and expenses in favor of Plaintiffs in an amount to be determined at trial; and;

d.  for such other and further relief as may be just and proper.

- 21 -

Dated: September 9, 2022

OF COUNSEL:

Steven R. Popofsky, Esquire
Joshua K. Bromberg, Esquire
KLEINBERG, KAPLAN,
WOLFF & COHEN, P.C.
500 Fifth Avenue
New York, NY 10110
Telephone: (212) 880-9895
Facsimile: (212) 986-8866

PRICKETT, JONES & ELLIOTT, P.A.

*/s/ Bruce E. Jameson*
Bruce E. Jameson (#2931)
John G. Day (#6023)
1310 North King Street
Wilmington, Delaware 19801
(302) 888-6500
bejameson@prickett.com
jgday@prickett.com

*Attorneys for Plaintiff*

4895-9058-2322, v. 1